IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01245-MEH

FRANCISCO JAVIER MARTINEZ,

      Plaintiff,

v.

BACK BONE BULLIES LTD,
BROOKE SKILLO, and
GABE SKILLO,

      Defendants.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Defendants' "Motion for Summary Judgment" ("Motion"). ECF 32. The Motion is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. For the following reasons, the Motion is granted in part and denied in part.

## <u>BACKGROUND</u>

      Plaintiff was a kennel technician for Defendant Back Bone Bullies LTD's dog breeding facility for approximately five months in 2019. ECF 22, Am. Compl. ¶ 2.  Defendants Gabe and Brooke Skillo are husband and wife and own and operate Back Bone Bullies. *Id.* ¶¶ 16, 18. Plaintiff alleges unpaid wages, including overtime wages. *Id.* ¶¶ 69–75. Prior to this lawsuit, Plaintiff went to the Colorado Department of Labor and Employment Division of Labor Standards and Statistics ("CDLE") to attempt to resolve this dispute. *Id.* ¶ 35. As a result of that process, the parties reached a settlement of Plaintiff's claims. *Id.* ¶ 48. However, there was an issue with the performance of the settlement. *Id.* ¶ 50. Plaintiff then retained counsel. *Id.* ¶ 52. This lawsuit followed.

Plaintiff filed suit on May 6, 2021. ECF 1, Compl. On September 2, 2021, he filed the operative Amended Complaint. ECF 22. In that pleading, Plaintiff brings two claims against Defendants: (1) violations of the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*; and (2) conversion/theft of services pursuant to Colo. Rev. Stat. § 18-4-401. Defendants have moved for summary judgment on both claims based on the parties' prior settlement.

## STANDARDS OF REVIEW

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense—his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id*. at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)). Only evidence for which

the content and substance are admissible may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings  and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

To begin, the Court notes that Defendants occasionally cite to the Amended Complaint for certain material facts. Although those proposed facts are not supported by citations to the record, the Court treats any citation to the Amended Complaint as an admission for purposes of summary

judgment. *See* Fed. R. Civ. P. 56(c)(1)(A). Additionally, Plaintiff provided seven additional facts. ECF 33 at 8–9. Because these additional facts are not material to the Court's analysis, the Court has not included them as separate facts but has attempted to incorporate elements of them when appropriate. With that in mind, the following are the Court's findings of material facts that are relevant to the Court's analysis and either undisputed or supported by the record, when viewed in the light most favorable to Plaintiff as the non-moving party.

1.      Defendants operate a small dog breeding business in Delta, Colorado offering Olde English Bulldogges and French bulldogs for sale. Am. Compl. ¶ 11.

2.      Plaintiff worked for Defendant Back Bone Bullies for approximately five months in 2019. *Id.* ¶ 2.

3.      On May 22, 2020, Plaintiff filed his wage complaint with the CDLE ("CDLE Complaint"). *Id.* ¶ 35.

4.      The CDLE Complaint and Notice of Complaint indicated that Plaintiff sought over $7,500.00 in lost wages due to: final wages not paid; hours worked not paid; overtime not paid; minimum wage not paid; commission or bonus not paid; vacation pay upon separation not paid; deductions from paycheck; and other "Photoshop/Web Design." *Id.* ¶¶ 35, 37.

5.      On December 23, 2020, a Notice of Complaint was served on Defendants through the CDLE. ECF 32-1, Ex. A. The Notice of Complaint identified, in part, that Plaintiff was seeking $7,500.00 in lost wages due to employee misclassification, wages under the minimum wage, underpaid overtime, the inclusion of fair market lodging cost, and improper deductions. *Id*. The Notice of Complaint related to Claim number 2672-20 and Claimant Francisco Martinez. *Id.*

6.      Filing such a wage complaint through the CDLE is an optional, free service available to current and former Colorado private sector employees to resolve wage disputes.[1] ECF 32-2, Ex. B. Employees may pursue their wage complaint through the CDLE process or may elect to go to court instead; the CDLE is not required in order to pursue the matter in court. *Id.* However, if the employee has already pursued the matter in court, that employee may not use the CDLE process. *Id.*

7.      On the CDLE Complaint, Plaintiff checked the following boxes for categories of suspected wage violations[2]:

    a.      final wages not paid;
    b.      hours worked not paid;
    c.      overtime not paid;
    d.      minimum wage not paid;
    e.      commission or bonus not paid;
    f.      vacation pay upon separation not paid;
    g.      deductions from paycheck; and
    h.      other ("Photoshop/Web design").

Am. Compl. ¶ 37.

8.      On December 28, 2020, Plaintiff and Defendants entered into a voluntary settlement agreement ("Settlement Agreement"), which provides in relevant part:

> **Settlements must be informed and voluntary, not coerced or induced by fraud**. The Division will not advise whether to settle. You can seek advice from a lawyer or anyone else about whether to settle or if you do not understand any terms.
>
> ***
>
> Employer and Claimant (together, the "Parties") agree, freely and without coercion or fraud, to settle all claims that either owes the other any wages or reimbursements, based on their agreement to all terms and explanations above and below.

---

[1] Plaintiff correctly argues that Defendants' citation to Exhibit A does not support this fact. However, this fact is supported by Exhibit B. The Court has modified the proposed fact to accurately reflect the wage complaint instructions as described in Exhibit B.

[2] Because Defendants cited to the Amended Complaint, the Court uses the language found there for the material fact.

> Once this settlement is fully performed, it will permanently settle and terminate **any claim** under **any law**—state, federal, or local—that **either Party** owes the other **any wages, penalties, or reimbursements through the date of the settlement.** No part of any such claim can be pursued in the Division, in court, or anywhere else. This settlement is not an admission that either Party was liable or was owed less than it may have claimed.
>
> ***
>
> Employer will pay Claimant [$7,500.00], which must be **received** by Claimant (not just sent) by **fourteen (14) days** after the Settlement Date (referred to as "Payment Due Date"). Payment will be sent to [408 S Stetson Dr, Payson, AZ 85541].

ECF 32-3, Ex. C (emphasis in original).[3]

9.    During the investigation, the CDLE investigator communicated with the Plaintiff by email. He told the Plaintiff the following: "I'm happy to pass along your offer of $[REDACTED]. However, you should know that they could pay you the $7,500.00 claim amount before the Notice of Complaint's deadline, and they wouldn't owe any fines or penalties on top of that. So if your goal is to settle the claim, your offer seems unlikely to cause that to happen because they can satisfy the claim for $7,500.00." In response, the Plaintiff responded, "Thanks for the information, so I guess instead advise Mr. Skillo that I wont [sic] take less than $7,500.00. If he doesn't pay and passes the deadline than all other fees will be applied. I understand now how this is working." After a couple more exchanges, the investigator clarified, "If he pays the full amount before the 14 days are up, he will not be liable for any penalties or fines." Am. Compl. ¶ 44.

10.   On December 29, 2020, in consideration of the Settlement Agreement, Defendants mailed a cashier's check for $7,500.00, two-day priority mail, to Plaintiff at the address listed in the

---

[3] Defendants' proposed eighth material fact is redundant of their sixth fact. Because the Court will not duplicate its findings, the Court's numbering of the facts from this point forward will not match the Motion's.

Settlement Agreement. ECF 32-4, Ex. D. This initial check was lost in the mail by the United States Postal Service. [4] ECF 32-5, Ex. E.

11.     At that point, Plaintiff reached out to and engaged counsel. [5] Am. Compl. ¶ 52.

12.     On January 14, 2021, the CDLE issued its Dismissal of Wage Complaint ("Dismissal"), acknowledging that the employer mailed the settlement payment on December 29, 2020 via United States Postal Service Priority Mail Express 2-day, and the settlement payment had not been received due to delay caused by the United States Postal Service and not due to any fault of the employer. ECF 32-6, Ex. F. Further, the Dismissal notes that the settlement payment was issued via cashier's check which cannot be canceled by the employer before ninety days after the date it was issued. *Id.* Finally, in the Dismissal, the CDLE stated that it may reopen this claim if Plaintiff did not receive payment by March 29, 2021 (which was ninety days after the issuance of the cashier's check). *Id.*

13.     On March 29, 2021, the CDLE investigator sent Mr. Skillo a correspondence indicating that Plaintiff "has not responded to any of [his] phone calls, text messages, or emails asking him to confirm his mailing address." ECF 32-7, Ex. G. The correspondence continued that "[g]iven the fact that [Plaintiff is] not responding to any of [his] efforts to contact him, as well as the fact that it wasn't until after you two agreed to settle the claim that he notified me of the last change to his address," the investigator needed to confirm the address confirmation to make sure that his address did not change again. *Id.* In light of the preceding, the investigator thought the "best route" would

---

[4] Plaintiff's response to this fact is that he does not have "evidence to the contrary" to be "in a position . . . to confirm or deny the accuracy of these assertions." ECF 33 at 5. This does not create a genuine dispute of material fact as it does not cite to contrary evidence. Nor does Plaintiff request additional time to investigate under Fed. R. Civ. P. 56(d).
[5] Defendants did not propose this fact, but the Court finds it material that Plaintiff did not retain counsel prior to signing the Settlement Agreement for reasons that will be explained.

be for Defendants to write a check for $7,500.00 to Plaintiff with "Settlement for 2672-20" written in the memo line, mail the check to the CDLE, and email the investigator a picture of the certified mail receipt with tracking information. *Id.*

14.     On March 29, 2021, Defendants mailed the second settlement check to the CDLE, certified mail, as directed.[6] ECF 32-8, Ex. H.

15.     On March 30, 2021, Plaintiff, by and through counsel, requested that the CDLE reopen Plaintiff's claim for the purpose of permitting Plaintiff to withdraw his wage claim and pursue the matter privately. Am. Compl. ¶ 56; ECF 32-9, Ex. I.

16.     On April 6, 2021, the CDLE denied Plaintiff's request to reopen his wage claim citing the Settlement Agreement precluding further wage claims. Am. Compl. ¶ 57; ECF 32-10, Ex. J. The CDLE forwarded the second cashier's check to Plaintiff's counsel with the denial to reopen the claim. Ex. J. Also, the letter documented that because the parties settled Plaintiff's claims, the claims were dismissed with prejudice. *Id*. at 3.

17.     Plaintiff, in the current action, is bringing claims in his Amended Complaint for violation of the FLSA and conversion/theft of services. Am. Compl. ¶¶ 68–79.

18.     In support of his claim for violations of the FLSA, Plaintiff alleges that "for some if not all workweeks" he "was paid less than the federal minimum wage." *Id*. ¶ 69. Plaintiff further alleges that "Defendants failed to compensate Plaintiff at a rate of one and one half times his normal hourly rate(s) for all hours over 40 worked in a workweek." *Id*. ¶ 71. Plaintiff contends that "Defendants failed to make, keep, and preserve accurate records regarding the wages, hours, and other conditions of employment of Plaintiff." *Id*. ¶ 72. Plaintiff finally contends that

---

[6] *See* Footnote 4, *supra*.

"Defendants had no good faith basis for believing that their pay practices as alleged above were in compliance with the law." *Id*. ¶ 73.

19.     In support of his claim for conversion/theft of services, Plaintiff alleges that

> failure to pay an employee less than the minimum wage *or* willful refusal to pay wages or compensation, or false denial of the amount of a wage claim, or the validity thereof, or that the same is due, with intent to secure for himself, any discount upon such indebtedness or underpayment of such indebtedness or with intent to annoy, harass, oppress, hinder, coerce, delay, or defraud the person to whom such indebtedness constitutes theft under C.R.S. § 18-4-401.

Am. Compl. ¶ 77. Plaintiff further alleges that Defendants are liable for three times the amount of actual damages "by failing to pay Plaintiff at or above the minimum wage and/or willfully refusing to pay him all wages and compensation he was owed." *Id.* ¶¶ 78–79.

## ANALYSIS

As already mentioned, Plaintiff brings two claims against Defendants: one for alleged violations of the FLSA and one for conversion/theft of services. Defendants ask the Court to enforce the parties' Settlement Agreement and dismiss the claims. Plaintiff responds that the parties' prior settlement does not release the claims, especially in the context of the FLSA. The Court will first interpret whether the release in the Settlement Agreement covers the claims in this case before proceeding to the FLSA specific arguments raised by Plaintiff.

## I.     **Scope of Release**

"A court may only enforce a settlement agreement if it constitutes an enforceable contract." *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009) (quoting *Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008)). Under Colorado law, "[a] contract is formed when one party makes an offer and the other accepts it, and the agreement is supported by consideration." *Id.* (citing *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008)). "The essential elements of an agreement to settle a case are a manifestation of agreement (an offer and acceptance) on

payment, release, and case dismissal terms (the consideration) between parties who have the capacity and authority to agree." *Gates Corp. v. Bando Chemical Indus., Ltd.*, 4 F. App'x 676, 685–86 (10th Cir. 2001). "Parties to a contract . . . may agree on whatever terms they see fit so long as such terms do not violate statutory prohibitions or public policy." *Id.* at 686 (quoting *Fox v. 1–10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998)).

Here, Plaintiff has not challenged whether the Settlement Agreement is a valid, enforceable document. Noting no opposition, the Court finds that the essential elements of offer, acceptance, and consideration are all present in this case, constituting a binding contract between the parties. Rather than attack the validity of the Settlement Agreement, Plaintiff broadly argues that claims outside those sounding in Colo. Rev. Stat. §§ 8-4 and 8-6 are not part of the Settlement Agreement's release. As a result, Plaintiff contends the scope of the release does not include his right to FLSA liquidated damages or his conversion claim.

### A.     FLSA Liquidated Damages

Plaintiff asserts that the Settlement Agreement's release is limited to claims seeking relief in the form of "wages, penalties, or reimbursements." ECF 33 at 10. He posits that those terms are limited in scope to those claims that the CDLE can consider. *Id.* To support this, Plaintiff cites to the Colorado statute which provides that "[n]othing in this section shall be construed to limit the right of the employee to pursue any civil action or administrative proceeding for any claims other than those considered by the division in the employee's wage complaint." Colo. Rev. Stat. § 8-4-111(7). Further, if the parties reach an agreement, "the payment shall constitute a full and complete satisfaction by the employer and bar the employee from initiating or pursuing any civil action or other administrative proceeding *based on the wage complaint* addressed by the citation and notice of assessment." Colo. Rev. Stat. § 8-4-111(2)(e) (emphasis added). Plaintiff acknowledges that no

formal assessment was rendered as to Plaintiff's CDLE complaint but argues this statutory language "underscores the lack of intent for CDLE claims to constitute limitations on other aspects of a claimant's legal claims." ECF 33 at 10.

Based on the plain language, the Settlement Agreement indicates a release of any claim in which either party "owes the other any wages, penalties, or reimbursements." Ex. C. Although the parties agreed to this release, it is evident that the parties now need an interpretation of "what the release term meant." *Choice Hotels Int'l, Inc. v. Papamkrupa Hospitality, LLC*, 851 F. App'x 846, 847 (10th Cir. 2021). On its face, the language of the Settlement Agreement is straightforward. The parties agreed to release any claim under any law stemming from allegations that either side owed the other wages, penalties, or reimbursements. Ex. C; *see also Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993) (citation omitted) ("Where a contract is unambiguous, its terms are given plain meaning, and the intent of the parties is determined from the document alone."). Put simply, if a claim emanates from a dispute about wages, penalties, or reimbursements, it falls within the scope of the agreed release. Plaintiff's attempt to limit the release to the remedies of wages, penalties, and reimbursements is unpersuasive.[7]

Despite this plain reading, Plaintiff asserts that the liquidated damages available under the FLSA are not a wage, penalty, or reimbursement. ECF 33 at 10–11. He focuses primarily on liquidated damages not being a penalty. Plaintiff cites to a Tenth Circuit decision, albeit an unpublished one, that has recognized an employee can recover FLSA liquidated damages and

---

[7] Hypothetically, Plaintiff's interpretation might hold more water if the release stated: "Once this settlement is fully performed, it will permanently settle and terminate any claim under any law—state, federal, or local—*for* any wages, penalties, or reimbursements through the date of the settlement." At least there, the plain language could reasonably be read to indicate a release of claims precisely seeking to recover wages, penalties, or reimbursements (and only those three remedies).

Colorado state law penalties without receiving a double recovery. *Evans v. Loveland Automotive Investments, Inc.*, 632 F. App'x 496, 498 (10th Cir. 2015). In other words, Plaintiff argues that the law treats liquidated damages different from the penalties contemplated by the release. The Court finds persuasive a published case cited in *Evans* holding that FLSA liquidated damages "are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1202 (10th Cir. 2004) (quotation and internal quotation marks omitted). As described by the Tenth Circuit, liquidated damages are a form of compensation arising from a claim of unpaid or delayed wages. *Id.* In other words, they stem from a claim in which one party owes the other wages. At the very least, liquidated damages form "part of any such claim." Ex. C. Thus, the right to seek liquidated damages is a claim covered by the plain language of the parties' release.[8]

Plaintiff also provides specific definitions of "wages, penalties, [and] reimbursements" that he argues are the applicable definitions of these terms. For wages, he points to the Wage Order[9] in effect during Plaintiff's 2019 employment that defines 'wages' as "'all amounts due employees for labor or service . . .'" ECF 33 at 10 (quoting Wage Order #36). As to "penalties," Plaintiff cites to the amounts assessed in Colo. Rev. Stat. § 8-4-109. *Id.* Finally, for "reimbursements," Plaintiff uses the definition of "monies that the employee expended for work related expenses, that should have been paid back," but he does not cite any authority for that definition. *Id.* at 10–11. Regardless of any specific definition, the problem with these definitions in general is that the Settlement

---

[8] This is not a ruling that the release is enforceable as to FLSA liquidated damages; rather, it is an acknowledgement that the claim for liquidated damages falls under the scope of the release.

[9] Plaintiff did not attach the Wage Order to his response or otherwise cite to it in a way that the Court could easily find the Wage Order. To remedy that, the Court notes that past Colorado Wage Orders can be accessed at https://cdle.colorado.gov/wage-and-hour-law/wage-order-archive.

Agreement does not explicitly incorporate them. Although the Settlement Agreement is on the standard CDLE form, the terms agreed to by the parties are devoid of references to or incorporation of definitions from other sources. In fact, the CDLE form even contemplates that the parties "may use their own settlement forms or may attach additional terms." Ex. C.  Plaintiff provides no authority for why his specific definitions apply to the terms in the Settlement Agreement. Absent that, the Court relies on the plain language of the release to determine that liquidated damages fall under that provision.

### B.    Conversion/Theft of Services Claim

As stated in the Amended Complaint, Plaintiff alleges Defendants have committed theft of services "[b]y failing to pay the Plaintiff at or above the minimum wage and/or willfully refusing to pay him all of the wages or compensation he was owed by law." Am. Compl. ¶ 78. In his Response, Plaintiff spends considerable time arguing how "conversion damages—even where premised upon wage underpayments—[are] fundamentally different from other remedies." ECF 33 at 12. To that end, he even attempts an analogy to car theft. *Id*. at 14. But the problem for Plaintiff here is no different than with the FLSA liquidated damages. Plaintiff's conversion claim arises from a dispute that Defendants owe him wages. The parties agreed to settle "any claim under any law—state, federal, or local—that either Party owes the other any wages . . ." Ex. C. Plaintiff's argument that his conversion claim seeks a different remedy than wages does not persuade the Court that the scope of the release is so narrow as to not capture the conversion claim.

### II.    <u>Enforceability of Release as to the FLSA Claim</u>

Having found that the release applies to the claims in this case, the Court next turns to Plaintiff's argument regarding whether the release is enforceable as to the FLSA claim. Plaintiff argues that "[p]rivate parties lack the independent authority to enter into binding agreements

purporting to release FLSA claims, because of the public interest aspect of the FLSA." ECF 33 at 15. Specifically, Plaintiff points to the fact that the Settlement Agreement was not approved by a court or the Department of Labor ("DOL") and contends that the Court must review the Settlement Agreement to ensure that it is "fair and reasonable." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)).

The question of whether private agreements to settle FLSA claims must be approved by a court largely remains unresolved. The seminal case on this question is the *Lynn's Food* decision by the Eleventh Circuit. There, the DOL investigated an employer and found wage and overtime policies that violated the FLSA. 679 F.2d at 1352. Consequently, the DOL concluded that the employer was liable to its employees for back wages and liquidated damages. *Id.* The employer could not reach a settlement with the government, so it went directly to its employees in an attempt to resolve the back wage claims. *Id.* The employer offered $1,000.00 to be divided among the employees on a pro rata basis. *Id.* Fourteen employees accepted this offer and signed agreements in exchange for waiving any claim for compensation under the FLSA. *Id.* The court held that "[o]ther than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees . . . is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355. Applying that holding, the court found none of the agreements with the employees met that criteria because the employees had not brought suit or consulted with attorneys, were unaware of their FLSA rights, and (at least some) did not speak English. *Id.* at 1354–55.

The potential problem with *Lynn's Food* is that "nothing in the text of the FLSA expressly requires court review and approval of settlements." *Ruiz v. Act Fast Delivery of Colo., Inc.*, No. 14-cv-00870-MSK-NYW, 2017 WL 11545275, at * 1 (D. Colo. Jan. 9, 2017). The first decision to seriously challenge *Lynn's Food* was *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005). In that case, an employee made complaints of unpaid overtime compensation. *Id.* at 611. To resolve the dispute, the employer offered the employee $1,000.00. *Id.* at 612. The employee reluctantly took the $1,000.00, "even though he believed he was owed nearly $3500 [sic] because he needed money to fix his vehicle and because his wife was sick." *Id.* In a later federal discrimination case, the employee asserted FLSA claims regarding unpaid overtime. *Id.* at 613.

In a thorough decision, the court held that because there was a bona fide dispute, court approval of the agreement was unnecessary. *Id.* at 631. To reach that conclusion, the court examined the legislative history of the FLSA and its amendments and evaluated them in light of the judicial interpretations of enforcing FLSA settlements. Without repeating the court's extensive analysis here, as another court described, "[i]t is enough to observe that *Martinez* persuasively concludes that the *Lynn's Food*[ ] requirement for judicial approval of voluntary settlements was driven by its facts—the employer overreached the employees in inducing them to settle unasserted and unevaluated claims for a small amount of money." *Ruiz*, 2017 WL 11545275, at *2. What is worth repeating, though, is the reasoning and holding of *Martinez*:

> Judicial caseloads, as well as the workload of the Wage and Hour Administration, would likely be swamped with unnecessary disputes, many dubious and with little evidence, that could not be finally settled without approval from either a court or the Secretary of Labor. This surely cannot be what was intended by Congress when the FLSA was passed. In fact, less than ten years after the passage of the FLSA, Congress amended the statute to provide for compromises of then-existing claims involving bona fide disputes. Though Congress could have made the express availability of such compromises prospective, rather than purely retrospective, it

> did not prohibit such compromises. . . . No court other than the Eleventh Circuit
> has expressly held that such a settlement is prohibited. . . . Therefore, the Court
> holds that, according to the language of the FLSA, its amendment by the Portal–
> to–Portal Act of 1947 and the Fair Labor Standards Amendments of 1949, and its
> interpretation in the case law, parties may reach private compromises as to FLSA
> claims where there is a bona fide dispute as to the amount of hours worked or
> compensation due. A release of a party's rights under the FLSA is enforceable
> under such circumstances.

*Martinez*, 361 F. Supp. 2d at 630–31.

The Fifth Circuit approved *Martinez*'s rationale in *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247 (5th Cir. 2012). There, the employees were members of a union that entered into a collective bargaining agreement with the employer. *Id.* at 249. When the employees filed a grievance for unpaid wages, the union sent a representative to investigate. *Id.* The investigator concluded that it would be impossible to establish whether the employees worked on the days they alleged to have worked. *Id.* As a result, the union and the employer entered into a settlement agreement as to the disputed hours worked by the employees. *Id.* When the employees later sued (represented by counsel), they argued that the settlement agreement did not release their FLSA claims. *Id.* at 250. The court adopted the holding of *Martinez* and held that the private settlement agreement was binding and enforceable without court approval. *Id.* at 255–56. In doing so, the court reasoned that a settlement agreement between the union and the employer "was a way to resolve a bona fide dispute as to the number of hours worked—not the rate at which Appellants would be paid for those hours—and though Appellants contend they are yet not satisfied, they received agreed-upon compensation for the disputed number of hours worked." *Id.* at 256.[10]

---

[10] The Fifth Circuit revisited the *Martin* decision in *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015). There, the court described *Martin* as an exception to the general rule that "unsupervised settlements that are reached due to a bona fide FLSA dispute over hours worked or compensation owed." *Id.* at 165. The court explained that the *Martin* exception "would not undermine the purpose of the FLSA because the plaintiffs did not waive their claims through some sort of bargain but instead received compensation for the disputed hours." *Id.* With that

The only other circuit court to have definitively weighed in on this issue, the Second Circuit, rejected *Martin* and agreed with *Lynn's Food*. In *Cheeks v. Freeport Pancake House, Inc.*, an employee sued his employer for overtime wages, liquidated damages, and attorneys' fees under the FLSA and New York state law. 796 F.3d 199, 200 (2d Cir. 2015).[11] After engaging in a period of discovery, the parties reached a private settlement and filed a joint stipulation for dismissal under Fed. R. Civ. P. 41(a)(1)(A). *Id.* The district court declined to accept the stipulation, finding that the employee could not agree to a private settlement without either court approval or DOL supervision. *Id.* The Second Circuit affirmed, concluding that "[r]equiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose . . ." *Id.* at 206.

Other than the Second, Fifth, and Eleventh Circuits, the other circuits have not conclusively addressed this issue. The circuit that has come the closest is the Federal Circuit which relaxed supervisory requirements but only in the context of unionized federal employees. *O'Connor v. U.S.*, 308 F.3d 1233, 1244 (Fed. Cir. 2002). The Fourth, Seventh, Eighth, and Ninth Circuits have acknowledged, either in dicta or without substantive analysis, the requirement of court approval or DOL supervision for FLSA settlements.[12] The First, Third, Sixth, Tenth, and District of

---

explanation, the Fifth Circuit found that the *Martin* exception did not apply in *Bodle*. *Id.* Specifically, the court found that there was not a bona fide dispute because the parties' settlement was obtained through a state court claim involving a non-compete agreement and did not concern FLSA compensation. *Id.* at 164–65. While *Bodle* can certainly be read as unwillingness to extend *Martin*, this Court does not find that *Bodle* abrogates or even materially alters the holding of *Martin*.

[11] Although the Second Circuit agreed with *Lynn's Food* in *Cheeks*, it subsequently declined to extend the requirement of judicial approval to Fed. R. Civ. P. 68(a) offers of judgment settling FLSA claims. *Mei Xing Yu v. Hasaki Restaurant, Inc.*, 944 F.3d 395, 414 (2d Cir. 2019).

[12] *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007), *overruled by regulation as recognized in Whiting v. The Johns Hopkins Hosp.*, 416 F. App'x 312, 314 (4th Cir. 2011); *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (7th Cir. 1986); *Copeland v. ABB, Inc.*, 521

Columbia Circuits have not expressly addressed the issue.[13] Given the *Lynn's Food* and *Martin*
split, and the lack of definitive guidance from other circuits, it is no surprise that district courts
around the country have struggled with whether there exists a *per se* rule for court approval of
private FLSA settlement agreements. *Compare Raus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 528
(E.D. Pa. 2016) ("[T]his Court rejects the *Martin* standard in favor of *Lynn's Food* . . ."), *with
Hawthorn v. Fiesta Flooring, LLC*, No. 1:19-CV-00019 WJ/SCY, 2020 WL 3085921, at *3
(D.N.M. June 10, 2020) ("The Court finds the reasoning by the Firth Circuit in *Martin* . . . to be
persuasive . . ."). Despite the lack of uniformity, it is fair to say that the *Lynn's Food* decision
establishes the majority rule, with *Martin* a smaller minority view (or, as *Bordle* described it, an
exception, 788 F.3d at 165).

To match the existing circuit split, decisions emanating from this District also have not
been consistent. As far as the Court can tell, prior to 2017, judicial officers in this district applied
the *Lynn's Food* holding without much question. *E.g.*, *Whittington v. Taco Bell of Am., Inc.*, No.
10-cv-01884-KMT, 213 WL 6022972, *2 (D. Colo. Nov. 13, 2013). Breaking this mold, on
January 9, 2017, District Judge Marcia S. Krieger issued an order denying a motion to approve a
settlement in *Ruiz v. Act Fast Delivery of Colo., Inc.* There, District Judge Krieger found

---

F.3d 1010, 1014 (8th Cir. 2008); *Seminiano v. Xyris Enterprise, Inc.*, 602 F. App'x 682, 683 (9th
Cir. 2015).

[13] *Roberts v. TJX Companies, Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *5 n.7 (D. Mass.
Sep. 30, 2016) (noting FLSA settlements require court or DOL approval but citing *Cheeks* and
*Lynn's Food*); *Stickel v. SMP Servs., LLC*, No. 1:15-cv-00252, 2016 WL 827126, at *2 (M.D. Pa.
Mar. 1, 2016) ("[T]he Third Circuit has not addressed the factors district courts should weigh when
evaluating FLSA settlements."); *Steele v. Staffmark Investments, LLC*, 172 F. Supp. 3d 1024, 1026
(W.D. Tenn. 2016) ("The Sixth Circuit has yet to rule definitely on the question . . ."); *Carrillo v.
Dandan Inc.*, 51 F. Supp. 3d 124, 129 (D.D.C. 2014) ("The D.C. Circuit has not opined about
whether judicial approval is required of FLSA settlements reached after an FLSA suit has been
filed or the related issue of whether such approval is a prerequisite for subsequent judicial
enforcement of a private settlement.")

"*Martinez*'s reasoning to be thorough, careful, and persuasive, and adopt[ed] it with a few further observations." *Ruiz*, 2017 WL 11545275, at \*2. She noted that in modern jurisprudence only settlements pursuant to Rule 23 class actions and settlements involving infants or incompetent persons required judicial review. *Id.* The reasons necessitating judicial input in those circumstances, namely that "the parties affected—the class members or the incompetent persons—are not directly before the court nor [are] they necessarily participat[ing] in the decision to settle[,]" are not present in the FLSA context. *Id.* at \*2–3. Moreover, District Judge Krieger found no basis for why the policy interests "underlying the FLSA are any more important than those underlying Title VII, the ADA, or other statutes designed to protect employees against discrimination or oppression, all of which may be effectively compromised by the affected employees in a private settlement without requiring court review or approval." *Id.* at \*3. For these reasons, she joined "with [the] *Martinez* court and the others that have adopted its reasoning, holding that an FLSA claim that is genuinely disputed by the employer may be compromised via a private settlement between the parties, and that such settlement will be legally effective regardless of whether they are submitted to or approved by the trial court." *Id.* (citing *Martin*, 688 F.3d at 255).[14]

Since *Ruiz*, there have been several cases from this District in which the court adjudicated motions to approve FLSA settlements applying *Lynn's Food* without addressing *Ruiz* or other cases disagreeing with *Lynn's Food*. *Prim v. Ensign United States Drilling, Inc.*, No. 15-cv-02156-

---

[14] District Judge Krieger surmised that "[t]here may be a small number of employers who will resort to subterfuge, misdirection, or coercion to improperly induce employees into surrendering their FLSA rights, but the correct solution to address a narrow problem is not an overbroad rule requiring all FLSA settlements to receive judicial review and approval. Rather, the appropriate remedy to cure such misconduct is the same remedy used in literally every other context where a settlement is claimed to be coercive, deceptive, or overreaching: upon a proper showing by the employee, the court may set aside the settlement contract and restore the employee's right to seek his or her FLSA remedies directly." *Ruiz*, 2017 WL 11545275, at \*3.

PAB-KMT, 2017 WL 3641844 (D. Colo. Aug. 24, 2017); *Davis v. Crilly*, 292 F. Supp. 3d 1167 (D. Colo. 2018); *Ostrander v. Customer Engineering Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2018 WL 1152265 (D. Colo. Mar. 5, 2018). Others have specifically acknowledged *Ruiz* but decided to review the at-issue settlement agreements given the legal uncertainty on this topic. *Manohar v. Sugar Food LLC*, No. 16-cv-02454-NYW, 2017 WL 3173451, at *2 (D. Colo. July 26, 2017); *Teague v. Acxiom Corp.*, No. 18-cv-01743-NYW, 2018 WL 3772865, at *1 (D. Colo. Aug. 9, 2018); *Thompson v. Qwest Corp.*, No. 17-cv-01745-WJM-KMT, 2018 WL 2183988, at *1–2 (D. Colo. May 11, 2018). In one case, though, District Judge Christine M. Arguello expressly agreed with the reasoning and holding of *Ruiz* and held "that judicial review of bona fide FLSA disputes is not required . . . [unless] there is evidence of malfeasance or overreaching in obtaining a settlement agreement." *Fails v. Pathway Leasing LLC*, No. 18-cv-00308-CMA-MJW, 2018 WL 6046428, at *3 (D. Colo. Nov. 19, 2018).

Attempting to make sense of this caselaw, Magistrate Judge Kristen L. Mix provided a comprehensive recitation of this history in her decision in *Slaughter v. Sykes Enterprises, Inc.*, No. 17-cv-02028-KLM, 2019 WL 529512, at *1–6 (D. Colo. Feb. 11, 2019). After describing the various judicial outcomes, Magistrate Judge Mix reasonably and fairly concluded "that while there is disagreement over whether FLSA settlements *must* be approved by the Court, there does not appear to be disagreement at this time over whether FLSA settlements *may* be approved by the Court." *Id.* at *6 (citing *Thompson*, 2018 WL 2183988, at *2).[15] Consequently, she decided to "review the Motion [for Approval of Collection Action Settlement], as requested by the

---

[15] The Court also notes that Magistrate Judge Mix prophetically observed that "[t]he tension between *Cheeks*, *Lynn's Food*, *Ruiz*, and *Fails* is likely to grow as more courts wade into this discussion of whether FLSA policy requires approval of such settlements." *Slaughter*, 2019 WL 529512, at *6.

parties . . . under the factors traditionally considered in the District of Colorado, despite the fact that there does not appear to be any obvious defect in the settlement process or agreement." *Id.* Those factors, drawn from *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *3 (D. Colo. Feb. 24, 2014) and adapted from *Lynn's Food*, require a court to approve a settlement agreement only when (1) the litigation involves a bona fide dispute; (2) the proposed settlement is fair and equitable to all parties; and (3) the proposed settlement contains a reasonable award of attorneys' fees. *Id.*

More recent cases in this District that have acknowledged *Slaughter* reject mandatory judicial approval of settlement agreements but nevertheless apply the factors mentioned above. *Carroll v. Schlumberger Tech. Corp.*, No. 20-cv-00619-PAB-STV, 2021 WL 4245370, at *1 (D. Colo. Sep. 16, 2021) (finding judicial approval is not required but noting that "there is a bona fide dispute, the settlement is fair and reasonable to all parties concerned, and the settlement contains a reasonable award of attorneys' fees"); *Lee v. Best Budz LLC*, No. 19-cv-02430-KMT, 2019 WL 5964966, at *3 & n.2 (D. Colo. Nov. 12, 2019) (finding "this case sits squarely in the camp of cases that do not require judicial approval of the settlement" but including a footnote "in an abundance of caution" that the court would have approved the settlement anyway for meeting the *Baker* factors). Other decisions have confirmed the lack of needed judicial review while remaining open to reviewing the merits of the settlement agreement. *Edwards v. Hudspeth & Associates, Inc.*, No. 20-cv-02867-STV, 2021 WL 2255358, at *2 (D. Colo. May 26, 2021) (finding a review of the settlement unnecessary but deferring ruling on the motion to approve the settlement until the parties indicate they "wish for the Court to review the merits of the Agreement").

An examination of decisions from other district courts in the Tenth Circuit post-*Slaughter* reveals a growing openness to depart from the *Lynn's Food* majority rule in favor of applying the

*Martin* standard. *Serna v. Bd. of Cnty. Comm'rs of Rio Arriba Cnty.*, No. 17-cv-196-RB-KBM, 2018 WL 4773361, at \*4 (D.N.M. Oct. 3, 2018) (finding "the Fifth Circuit's reasoning in *Martin* persuasive when applied to this case"); *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at \* 3 (N.D. Okla. Jan. 4, 2019) (limiting *Lynn's Food* to the facts of that case); *Riley v. D. Loves Restaurants, LLC*, No. 20-1085 WJ/KK, 2021 WL 1310973, at \*4 (D.N.M. Apr. 8, 2021) (finding "the Firth Circuit's reasoning in *Martin*, and the reasoning of the federal district courts in *Martinez*, *Fails*, *Serna*, and *Lawson*, to be persuasive . . .."). This is not to say that this rationale has been uniformly adopted. *Mpia v. Healthmate Int'l, LLC*, No. 19-CV-02276-JAR, 2021 WL 2805374, at \*1 (D. Kan. July 6, 2021) ("A settlement of claims brought under the FLSA must be presented to the court for review and a determination of whether the [agreement] is fair and reasonable."); *Craven v. McCaffree-Short Title Co., Inc.*, No. 2:21-cv-02003-TC-GEB, 2021 WL 5505705, at \*2–3 (D. Kan. Nov. 24, 2021) (approving settlement agreement because it involved a bona fide dispute, the proposed settlement was fair and equitable to all parties, and awarded reasonable attorneys' fees).

After reviewing this extensive caselaw, the Court finds itself in agreement with the *Martin* line of cases for the reasons stated in *Martin*, *Martinez*, *Ruiz*, and *Fails*. The Court emphasizes four primary reasons for doing so. First, *Lynn's Food* reads into the FLSA a requirement that is not found in the text of the FLSA. *Shelter v. Mut. Ins. Co. v. Borgens*, No. 20-cv-00448-RM-SKC, 2021 WL 2222728, at \*2 (D. Colo. June 2, 2021) ("[T]he Court will not judicially legislate by reading a statute to accomplish something the plain language does [not] suggest, warrant, or mandate."); *see also Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, No. 18-cv-2008-CJW-MAR, 2019 WL 5865629, at \*1 (N.D. Iowa Apr. 25, 2019) ("The idea that courts may not legislate from the bench, however, is far from a new idea.") (citation omitted).

Second, in judicially creating a requirement for approval of FLSA settlements, courts are impliedly and improperly giving the impression that somehow the policy considerations and rights protected by the FLSA are more important than other federal statutes. *See Cheeks*, 796 F.3d at 207 ("[T]he FLSA is a uniquely protective statute."). As one court aptly described,

> The [FLSA] was enacted to protect against "the evil of overwork" without statutorily required compensation. But surely, that evil is no greater than a case where a police officer gratuitously beats a suspect (42 U.S.C. § 1983), or a debt collector threatens children that their father will be imprisoned if he does not pay his bill (Fair Debt Collection Practices Act), or a consumer's credit is ruined because of a falsely reported debt (Fair Credit Reporting Act), or an employee is forced to submit to unwanted sexual advances or face termination (Title VII). These, and many others, are federal cases for a reason. They are all important, and the statutes and constitutional provisions under which they arise all protect unique interests based on unique policy considerations. For the courts to begin ranking the wrongs addressed by Congress where Congress has not would be to assume a legislative role.

*Barnhill v. Fred Stark Estate*, No. 15 Civ. 3360(BMC), 2015 WL 5680145, at *2 (E.D.N.Y. Sep. 24, 2015) (internal citation omitted).

Third, mandatory judicial oversight of every FLSA settlement unduly burdens everyone involved in the process: courts, attorneys, and litigants. *See* Keith William Diener, *Judicial Approval of FLSA Back Wages Settlement Agreements*, 35 Hofstra Lab. & Emp. L.J. 25, 72 (2017) (noting there are numerous cases "involving courts . . . requesting more information or support for the agreement by the settling attorneys, which, in turn, delays the approval of the settlement, and places a burden on both courts and practitioners (as well as those employees eagerly awaiting their long overdue back wages)"); *see also Picerni v. Billingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 378 (E.D.N.Y. 2013) ("[B]y forcing the plaintiff to proceed when he did not want to, the Court may have inadvertently increased the potential adverse social consequences to the plaintiff of having brought the suit.") (citation omitted), *abrogated by Cheeks*, 796 F.3d at 205–07.

Fourth, there is a strong general presumption of allowing parties the freedom to resolve disputes through private contractual agreement. *E.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 719 (2015) (Thomas, J., dissenting) ("[T]he law has long encouraged and permitted private settlement of disputes . . ."); *see also* 5 Williston on Contracts § 12:3 (4th ed.) ("[P]ublic policy also requires that parties of full age and competent understanding must have the greatest freedom of contracting, and contracts, when entered into freely and voluntarily, must be upheld and enforced by the courts.").

For these reasons, and as ably explained by other courts holding as much, the Court adopts[16] the reasoning found in *Martin*, *Martinez*, *Ruiz*, and *Fails* in this case: parties to a bona fide FLSA claim may resolve their dispute via a private settlement agreement, with such agreement being legally effective regardless of submission to or approval by the trial court. This, of course, begs the question of what constitutes a bona fide claim. The courts in *Martin, Martinez*, and *Ruiz* did not define the contours of a bona fide dispute. The court in *Fails* implied that a bona fide dispute does not exist when "there is evidence of malfeasance or overreaching in obtaining a settlement agreement." *Fails*, 2018 WL 6046248, at *3. Other courts have used different definitions of bona fide disputes. *Compare Archer v. TNT USA, Inc.*, 12 F. Supp. 3d 373, 387 (E.D.N.Y. 2104) (finding that parties did not provide evidence of a bona fide dispute despite the settlement being reached during litigation), *with Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 133 (D.D.C. 2014) (finding the parties presented a bona fide dispute because the parties disagreed as to the accuracy of the employee's time slips, whether travel was reasonably compensable, and if money was advanced to the employees).

---

[16] The Court also believes, at a minimum, that *Lynn's Food* should be read in light of its facts and not construed as the ultimate authority on mandatory judicial review of private FLSA settlement agreements in all circumstances.

Although clarity on what constitutes a bona fide dispute is needed, the Court need not exactly define a bona fide dispute in this case. Generally, as part of the bona fide dispute, the weight of authority[17] holds that employees must have counsel for private settlement of FLSA claims to be enforceable. *Martin*, 688 F.3d at 257 (finding FLSA rights were not waived because employees, "with counsel, personally received and accepted compensation for the disputed hours"); *Cheeks*, 796 F.3d at 204 (describing *Martin* as not a "wholesale rejection of *Lynn's Food*" because, in part, the Fifth Circuit relied "heavily on evidence . . . that the employees who accepted the earlier settlement were represented by counsel"); *Serna*, 2018 WL 4773361, at *4 (emphasizing that both sides were represented by counsel); *Lawson*, 2019 WL 112781, at *2 (suggesting a bona fide dispute does not exist if a party is unrepresented); *Riley*, 2021 WL 1310973, at *4 (finding judicial approval unnecessary because, in part, the plaintiff has been represented by lawyers); *Lee*, 2019 WL 5964966, at *3 (noting "that the peculiar opt-in nature of an FLSA collective action anticipates that all parties who settle are actively participating and are represented by counsel").

In this case, there is no dispute that Plaintiff was unrepresented when he entered into the Settlement Agreement. Thus, even under the *Martin* standard, the Settlement Agreement does not relate to a bona fide dispute and is unenforceable as to the FLSA claims. In so holding, the Court recognizes the potential disruptions that the CDLE (and similar agencies in other states) and courts may face. After all, the Court suspects that many pro se parties have resolved their wage disputes, including FLSA claims, through the CDLE (or an equivalent agency in another state). The notion that employers who thought they settled wage claims may now face resurgent FLSA claims is

---

[17] Interestingly, *Martinez* involved a pro se litigant who negotiated the settlement agreement without representation. *Martinez*, 361 F. Supp. 2d at 612–13. Although the *Martin* court adopted the reasoning in *Martinez*, the Fifth Circuit emphasized that it did so because, in part, the employees in *Martin* were represented by counsel. *Martin*, 688 F.3d at 256 n.10 & 257.

daunting.  But whatever might be said about allowing pro se parties to privately settle their claims (through the CDLE or otherwise), the Court cannot go against the weight of authority that a bona fide dispute does not exist if the employee is unrepresented when agreeing to settle an FLSA claim.

## CONCLUSION

The parties entered into a settlement with an agreement to release all claims that either party owed the other any wages, penalties, or reimbursements. Because Plaintiff's conversion claim stems directly from a dispute about unpaid wages, the release applies and is enforceable as to that claim. However, although the release is broad enough to capture Plaintiff's FLSA claim, the release cannot be enforced as to that claim, because Plaintiff was unrepresented at the time he signed the Settlement Agreement. Accordingly, Defendants' Motion [filed November 12, 2021; ECF 32] is **granted in part** as to the conversion claim and **denied in part** as to the FLSA claim.

SO ORDERED.

Entered this 15th day of March, 2022, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge